1

2

3

4

5

6

7

8                          **IN THE UNITED STATES DISTRICT COURT**

9                         **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   W.A.., a minor, By and Through his parents          CASE NO. CV F 10-1317 LJO SMS
     and guardians ad litem S.A. and J.A. and S.A.
12   and J.A. individually,

13                  Plaintiffs,                          **ORDER ON DEFENDANT'S MOTION TO**
                                                         **DISMISS** (Doc. 15)
14        vs.

15   PATTERSON JOINT UNIFIED SCHOOL
     DISTRICT, CARLI BRIONES, and DAVE
16   HODGE,

17                  Defendants.
                                                /
18

19                                    **INTRODUCTION**

20        Plaintiffs W.A., by and through his guardian ad litem ("Student"), and S.A. and J.A. individually

21   (collectively "plaintiffs") appeal an education due process hearing pursuant to 20 U.S.C. §1415(i)(2)(A).

22    By notice on October 14, 2010, defendants Patterson Joint Unified School District ("District"), Carli

23   Briones, and Dave Hodge (collectively "defendants") moved to dismiss plaintiffs' complaint pursuant

24   to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).   Defendants argue that plaintiffs failed to exhaust their

25   administrative remedies and fail to state a claim for a violation of the Americans with Disabilities Act,

26   42 U.S.C. §12101 et seq., ("ADA"), and Section 504 of the Rehabilitation Act of 1973, as amended, 29

27   U.S.C. §794 ("Section 504"), and the Fourth Amendment to the United States Constitution.  For the

28   reasons discussed below, this Court GRANTS in part and DENIES in part defendants' motion.

                                            1

1

**BACKGROUND**

2        Student is a minor child who is eligible for special education and related services because he has

3    autism.  Student resides within the District boundaries, and attended District schools during all relevant

4    times.  Plaintiffs allege, *inter alia*, that Student was harmed by the use of improper restraints by his

5    teacher Carli Briones ("Ms. Briones") and another District employee.

6        Ms. Briones was Student's teacher during the 2007-2008 school year.  At the beginning of the

7    school year, Student engaged in a 30-minute aggressive episode in which he followed Ms. Briones

8    around the classroom while hitting and kicking her.  At the time, Ms. Briones was not trained in restraint

9    techniques and the classroom aide, Yoland Ledezma ("Ms. Ledezma") was not trained in Applied

10   Behavioral Analysis ("ABA") techniques.

11       A behavior support plan ("BSP") was developed for Student on August 8, 2007 following the

12   30-minute aggressive episode.  The BSP was not approved of or provided to Student's parents until the

13   due process hearing held in February and March 2010.  S.A., Student's mother, expressed her concerns

14   that Student did not have a behavior intervention plan ("BIP"), to District's director of special education

15   Dave Hoge ("Mr. Hoge") in an October 19, 2007 email.

16       In November 2007, instead of performing a functional assessment analysis ("FAA") to determine

17   the reason behind Student's behaviors and provide a BIP, District developed a second BSP that allowed

18   the use of District-approved restraints as a consequence to Student's aggressive behaviors.  When the

19   BSP was presented to S.A., District did not explain what types of restraints would be used, nor did the

20   District explain that the parents were waiving their son's rights under the Hughes Bill to certain

21   procedural safeguards, including the filing of behavior emergency reports ("BERs") and holding an

22   individualized education program ("IEP") meeting with parents and staff within two days of restraint

23   to discuss whether any modifications were necessary to the IEP and, if so, whether an FAA would be

24   conducted.  S.A. agreed to the proposed BSP.

25       Ms. Briones and another District employee performed restraints on Student on December 17,

26   2007, January 8-10, 2008, January 15-18, 2008, and January 21, 2008.

27       In April 2008, W.A. was restrained twice while he was a student at Sierra Vista, a non-public

28   school District contracted with and placed him in pursuant to an IEP.

1    Plaintiffs allege that during the 2007-2008, 2008-2009, and 2009-2010 school years, District
2    failed to offer Student an appropriate placement, support and services, failed to conduct appropriate
3    assessments, failed to comply with all of the IDEA's procedural requirements, and failed to comply with
4    the Hughes Bill.  Plaintiffs filed a request for due process with the California Office of Administrative
5    Hearings ("OAH") on November 4, 2009.  This followed a request for due process filed by the District
6    on November 2, 2009.

7    The OAH held a hearing regarding both complaints on February 1-4, February 8-9, February16-
8    17, and March 3, 2010.  In an April 27, 2010 decision, the administrative law judge ("ALJ") answered
9    the following questions by way of a ruling:

10                                        **Student's Issues**

11   1)   During the 2007-2008 school year, after November 2, 2007, did the District deny Student a free
12        appropriate education ("FAPE") because:

13        a)   The BSP of November 16, 2007 did not address Student's behavioral deficits?

14        b)   The District failed to conduct a timely FAA and develop a BIP from November 16, 2007
15             through April 4, 2008 which were required to address Student's increased non-
16             compliance, elopement, and aggression, which impeded his learning?

17        c)   The District did not comply with the Hughes Bill requirements because it used
18             inappropriate physical restraints and aversive interventions on Student, did not prepare
19             BERs, did not notify parents of emergency interventions, and did not convene IEP
20             meetings to discuss the emergency interventions, even though Student had "serious
21             behavior problems"?

22   2)   Did District deny Student a FAPE during SY 2007-2008, SY 2008-2009, and SY 2009-2010 by
23        failing to conduct timely occupational therapy ("OT") pragmatic language, and inclusion
24        assessments?

25   3)   Did the April 4, 2008 IEP deny Student a FAPE because:

26        a)   It did not contain appropriate reading, math, self-help, pragmatic, expressive and
27             receptive language, fine motor, sensory integration, behavior and social skill goals to
28             meet Student's unique needs?

b)  Contained an offer of placement at a non-public school, Sierra Vista, which was not reasonably calculated to meet Student's unique needs in the least restrictive environment ("LRE")?

c)  District predetermined Student's placement, which denied his parents the opportunity to participate meaningfully in the educational decision-making process?

d)  District unilaterally reduced Student's speech and language OT services?

e)  District failed to offer appropriate behavior support and services, including not providing Student with an appropriate FAA and BIP?

4)  From April 2008 through June 2009, was Student denied a FAPE because staff at Sierra Vista did not implement Student's April 4, 2008 IEP or BIP?

5)  Did the August 26, 2008 IEP deny Student a FAPE because:

a)  District's offer of placement at Teel Middle School ("Teel"), including transportation, was not adequate to meet his unique needs in the LRE?

b)  District failed to offer appropriate behavior support and services, including not providing Student with an appropriate FAA and BIP?

c)  District predetermined Student's placement and failed to consider information presented by Mother at the IEP meeting?

6)  Did the IEP of October 6, 2008 deny Student a FAPE because:

a)  District's offer of placement at Teel, including transportation, was not adequate to meet his unique needs in the LRE?

b)  District predetermined Student's placement and limited his parents' ability to observe possible placements, which denied his parents the opportunity to participate meaningfully in the educational decision-making process?

c)  District failed to offer appropriate behavior support and services, including not providing Student with an appropriate FAA and BIP?

7)  Did the IEPs of November 24, 2008, and December 11, 2008, deny Student a FAPE because:

a)  District did not propose an appropriate educational placement, which necessitated that Student remain in home/hospital instruction?

4

      b)     District failed to offer appropriate behavior support and services, including not providing Student with an appropriate FAA and BIP?

8)     Did the IEP of December 11, 2008 deny Student a FAPE because:

      a)     It did not contain appropriate reading, math, self-help, pragmatic, expressive, and receptive language, fine motor, sensory integration, and social skill goals to meet Student's unique needs?

      b)     District unilaterally ceased providing Student with home/hospital instruction after his IEP meeting?

9)     During SY 2008-2009, did the District deny Student a FAPE by failing to consider information from Student's private assessors and not inviting private assessors to the IEP meetings?

10)    Did the IEP meeting of March 13, 2009 deny Student a FAPE because:

      a)     District's offer of placement at Teel, including transportation, was not adequate to meet his unique needs in the LRE?

      b)     District failed to offer appropriate behavior support and services, including not providing Student with an appropriate FAA and BIP?

11)    Did the April 29, 2009 IEP, as modified on July 29, 2009, deny Student a FAPE because:

      a)     It did not contain appropriate reading, math, self-help, pragmatic, expressive, and receptive language, fine motor, sensory integration, and social skill goals to meet Student's unique needs?

      b)     District's offer of placement at Teel, including transportation, was not adequate to meet his unique needs in the LRE?

      c)     District brought an attorney to attend the IEP meeting of April 29, 2009, despite parents' objection to his presence, which denied parents the opportunity to participate meaningfully in the educational decision-making process?

      d)     District predetermined Student's placement and limited parents' ability to observe other possible placements, which denied his parents the opportunity to participate meaningfully in the educational decision-making process?

      e)     District failed to offer appropriate behavior support and services, including not providing

1    Student with an appropriate FAA and BIP?

2                                    **District's Issues**

3    1)    During SY 2007-2008 through April 4, 2008, did the District provide Student with a FAPE
4          because the District met Student's unique needs at Apricot Valley Elementary School ("Apricot
5          Valley") and took reasonable actions to return Student to a classroom after his parents removed
6          him from Apricot Valley?

7    2)    Was the IEP of April 4, 2008 reasonably calculated to provide Student with meaningful
8          educational progress in the LRE?

9    3)    During SY 2008-2009, did the District provide Student with a FAPE because the District could
10         meet Student's unique needs at Sierra Vista, and took reasonable actions to return Student to a
11         classroom after his parents removed him from Sierra Vista?

12   4)    Was the IEP of October 6, 2008 reasonably calculated to provide Student with meaningful
13         educational progress in the LRE?

14   5)    During SF 2009-2010, did the District provide Student with a FAPE because the District could
15         meet Student's unique needs at Teel?

16        The ALJ found that Student fully prevailed on Student Issue 1(c) and District Issue 1.  W.A.

17   partially prevailed on Student Issues 2, 3(a), 3(d), 4, 8(a), and 11(a) and District Issues 2, 4, and 5.

18   District prevailed fully on Student Issues 1(a), 2(b), 3(b), 3(c), 3(e), 5(a), 5(b), 5(c), 6(a), 6(b), 6(c), 7(a),

19   7(b), 8(b), 9, 10(a), 10(b), 11(b), 11(c), 11(d), and 11(e) and District Issue 3.  District partially prevailed

20   on Student issues 2, 3(a), 3(d), 4, 8(a) and 11(a) and District Issues 2, 4, and 5.

21        Plaintiffs filed this appeal on July 22, 2010.  In their first cause of action, Plaintiffs assert a

22   violation of the IDEA, 20 U.S.C. §1415 against District, to appeal all of the issues on which they did not

23   prevail fully.  Plaintiffs also assert the following causes of action: violation of the ADA, 42 U.S.C.

24   §12101 et seq., against District (second cause of action); violation of Section 504 of the Rehabilitation

25   Act against District (third cause of action); and violation of 42 U.S.C. §1983 ("Section 1983) and Fourth

26   Amendment  against Ms. Briones and Mr. Hodge in their individual capacities (fourth cause of action).

27   Plaintiffs base their ADA and Section 504 claims on allegations of disability discrimination.  Plaintiffs

28   base their Fourth Amendment claim on allegations that the restraints were an illegal seizure.

                                              6

1    Defendants moved to dismiss on October 14, 2010.  Defendants argue that Plaintiffs have failed
2    to exhaust their administrative remedies as to any federal claims, and specifically their ADA, Section
3    504, and Fourth Amendment causes of action, because they did not raise the issues of disability
4    discrimination and illegal seizure in the administrative hearing.   In addition, Defendants argue that
5    Plaintiffs fail to plead facts to establish a prima facie claim for their ADA, Section 504, and Fourth
6    Amendment claims.  Plaintiffs opposed the motion on November 2, 2010.  Plaintiffs argue that they have
7    exhausted all administrative remedies through the OAH administrative hearing.   In addition, plaintiffs
8    argue that they were not required to exhaust remedies as to their ADA, Section 504, and Section 1983
9    claims, and they have stated a claim for those causes of action.   Defendants replied on November 8,
10   2010.  This Court found this motion suitable for a decision without a hearing, vacated the November 16,
11   2010 hearing pursuant to Local Rule 230(g) and issues the following order.

12                                  **DISCUSSION**
13                    **Failure to Exhaust Administrative Remedies**
14                                **Standard of Review**

15   Defendants argue that this Court lacks subject matter jurisdiction over Plaintiffs' ADA, Section
16   504 and Fourth Amendment claims, because Plaintiffs failed to exhaust administrative remedies as to
17   those claims.   When a motion to dismiss "attacks the substance of the complaint's jurisdictional
18   allegations" the Court considers the motion under Fed. R. Civ. P. 12(b)(1) standards.   *Corrie v.*
19   *Caterpillar*, 503 F.3d 974, 980 (9th Cir. 2007).  "Under such circumstances, the Court may expand its
20   review and rely on affidavits or any other evidence properly before the court." *Id*. (citing *Thornhill*
21   *Publ'g Co. v. Gen Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).  "Where the jurisdictional
22   issue is separable from the merits of the case, the judge may consider the evidence presented with respect
23   to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594
24   F.2d at 733 (citing *Berardelli v. Castle & Cooke, Inc*., 587 F.2d 37 (9th Cir. 1978)).

25   To determine whether jurisdiction is proper, the Court first considers whether District's motion
26   is a facial or factual attack on subject matter jurisdiction.  "In a facial attack, the challenger asserts that
27   the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By
28   contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would

otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, the Court is presented with a factual jurisdictional attack, because District disputes the truth of Plaintiff's allegations that the issue was raised in the administrative proceeding. *See id.*; *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Moreover, in support of its position, District converted "the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court." *Safe Air*, 373 F.3d at 1039. Accordingly, this Court "may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Thornhill*, 594 F.2d at 733. This Court "need not presume the truthfulness of the plaintiff's allegations" in a factual jurisdictional attack. *Safe Air*, 373 F.3d at 1039 (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Rather, in opposing District's challenge, Plaintiffs must "furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

**Exhaustion Required**

Plaintiffs must exhaust their administrative remedies before bringing federal claims regarding a denial of publicly funded special education. The IDEA provides an administrative appeal procedure "to be pursued before seeking judicial review." *Hoeft v. Tuscon Unified School Dist.*, 967 F.2d 1298, 1302 (9th Cir. 1992); *see also*, *Robb v. Bethel School Dist*. #403, 308 F.3d 1047, 1050 (9th Cir. 2002). Although the IDEA is not the exclusive remedy for children with disabilities, the exhaustion requirement of the IDEA explicitly applies to "other Federal laws protecting the rights of children with disabilities," including Section 504. 20 U.S.C. §1415(*l*) ("[B]efore filing the civil action under [title V of the Rehabilitation Act of 1973] seeking relief that is also available under this subchapter, the procedures ...of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter."). This exhaustion requirement applies to Section 504 claims, *J.G. v. Douglas County Sch. Dist.,* 552 F.3d 786, 802 (9th Cir. 2008), ADA claims, *Christopher S. v Stanislaus County Office of Educ.*, 384 F.3d 1205 (9th Cir. 2004), and claims brought pursuant to 42 U.S.C. §1983. *Blanchard v Morton Sch. Dist*., 420 F3d 918 (9th Cir. 2005). This Court lacks subject matter jurisdiction over federal claims Plaintiff failed to raise in the relevant administrative procedure. *Id.; Robb,* 308 F.3d 1047, 1050 (9th Cir. 2002).

8

1    Where administrative remedies do not provide adequate relief, however, and a plaintiff seeks

2    money damages, a plaintiff may not be required to exhaust administrative remedies before raising a

3    federal claims in a civil action. *Smith v. Barton*, 914 F.2d 1330, 1333 (9th Cir. 1990); *see also, Mark H.*

4    *v. Lemahieu*, 513 F.3d 922, 935 n.11 (9th Cir. 2008).  The "IDEA requires that when a plaintiff files an

5    action that seeks relief under another statute, and that relief is also available under IDEA, he or she must

6    follow IDEA exhaustion procedures." *J.G.*, 552 F.3d at 802 (citing 20 U.S.C. §1415(*l*)).  The IDEA

7    allows claim "with respect to any matter relating to the identification, evaluation, or educational

8    placement of the child, or the provision of a free appropriate public education" to be heard. 20 U.S.C.

9    §1415(b)(6). Thus, the "dispositive question...is whether [the student] is seeking remedy for injuries that

10   could be redressed to any degree by the IDEA's administrative procedures." *Blanchard v. Morton Sch.*

11   *Dist.*, 420 F.3d 918, 921 (9th Cir. 2005).

12   Although a plaintiff is required to exhaust administrative remedies, the "IDEA's exhaustion

13   requirement is not . . . a rigid one." *Porter v. Bd. of Trustees of Manhattan Beach*, 307 F.3d 1064, 1069

14   (9th Cir. 2002).  Plaintiffs need not seek a due process hearing "where resort to the administrative

15   process would either be futile or inadequate." *Hoeft*, 967 F.3d at 1303.  To fall within the futility

16   exception to the exhaustion requirement, a party must allege futility or inadequacy of IDEA

17   administrative procedures, and bears the burden of proof on this issue. *See Robb*, 308 F.3d at 1050 n.2.

18   If the plaintiff seeks a remedy for an injury that could not be redressed by the IDEA's administrative

19   procedures, then the claim falls outside of the IDEA's comprehensive reach, and exhaustion is

20   unnecessary. *See Robb*, 308 F.3d at 1050. On the other hand, if the injury could be redressed "to any

21   degree" by the IDEA's administrative procedures–or if the IDEA's ability to remedy an injury is

22   unclear–then exhaustion is required. *Kutatsi v. Las Virgenes Uni. Sch. Dist.*, 494 F.3d 1162, 1168 (9th

23   Cir. 2007).

**ADA and Section 504**

24

25   Plaintiffs base their ADA and Section 504 claims on alleged disability discrimination, a claim

26   not raised in the administrative proceeding.  In their second cause of action, Plaintiffs allege that the

27   defendants' conduct "violated the ADA in that Plaintiff W.A. who is a student with a qualified disability,

28   was either not provided programs, services and activities that were provided to non-disabled students,

or was provided programs, services, and activities that were not equal to, and are inferior to the services provided to students who are not disabled." Compl. ¶39.  Plaintiffs contend that Student "was physically and emotionally harmed" by the District's employees who used "unnecessary and harmful restraint techniques which amounts to disability discrimination." *Id*.  In addition, Student's parents "suffered from emotional distress due to the actions of the District and its employees that constituted disability discrimination." *Id.* In their third cause of action, plaintiffs allege that District "unlawfully discriminated against Plaintiff on the sole basis of disability." Compl. ¶46.  Plaintiffs further allege that "[s]olely by reason of his disability, Plaintiff has been excluded from participation in, denied the benefit of, and subjected to discrimination in his attempts to receive full and equal access to the facilities, programs, services, and activities offered by Defendants." Compl., ¶47.

Although plaintiffs raised nearly 30 detailed sub-issues in the administrative proceeding, plaintiffs failed to raise the issue of disability discrimination.  As such, this Court lacks jurisdiction to consider plaintiffs' causes of action based on their disability discrimination claims.  As the Ninth Circuit explained in a similar case:

> Appellants went through the administrative process but did not argue that the District discriminated against [them].  Appellants argue that their lack of exhaustion is not fatal to their claim because their [disability discrimination] claim could not be heard in an IDEA due process hearing.  Nevertheless, §1416(b)(6) allows claims "with respect to *any* matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to be heard. 20 U.S.C. §1415 (b)(6) (emphasis added).  Further, the parents of *Mark H.* presented their Rehabilitation Act claim during the administrative process, even though the hearing officer did not rule on the issue.   Appellants also could have argued their discrimination claim in the hearing...[T]his claim should have been dismissed without prejudice for lack of jurisdiction.

*J.G. v. Douglas County Sch. Dist.*, 552 F.3d 786, 803 (9th Cir. 2008).  Where, as here, "the parties are still litigating their educational issues and the administrative process might have been used in an attempt to gain a remedy for their alleged injury," exhaustion is required.  *Id*. at n. 12.  Because plaintiffs failed to raise their disability discrimination allegations in the administrative proceeding, this Court lacks jurisdiction over claims based on these allegations.  Accordingly, this Court dismisses plaintiffs' second and third causes of action.

**Fourth Amendment**

Plaintiffs Fourth Amendment cause of action is asserted against Mr. Briones and Mr. Hodge

1    individually.   Plaintiffs allege that the acts and omissions of these defendants, "under color of

2    law...deprived Plaintiff of his rights under the United States Constitution." Compl. ¶53.   Specifically,

3    plaintiffs allege that defendants deprived Student of his "constitutional right to be free from unreasonable

4    government seizures...[b]y repeatedly using physical restraints on W.A. when they were not necessary

5    or approved." Compl. ¶54.   Plaintiffs' Fourth Amendment claim is based, in part, on defendants alleged

6    failure to "adhere to the Hughes Bill requirements for use of restraints." *Id*.

7           Plaintiffs challenged defendants' use of restraints and alleged failure to comply with the Hughes

8    Bill related to the use of restraints in the administrative proceeding.   In Student's Issue 1(c), plaintiffs

9    asserted that:

10          [t]he District did not comply with the Hughes Bill requirements because it used inappropriate
            physical restraints and aversive interventions on Student, did not prepare BERs, did not notify
11          parents of emergency interventions, and did not convene IEP meetings to discuss the emergency
            interventions, even though Student had "serious behavior problems"?
12

13   As set forth above, plaintiffs were not required to assert a Fourth Amendment claim, but were required

14   to assert the allegations upon which that claim rest at the administrative level. *See, J.G.*, 552 F.3d at 803;

15   *J.W. v. Fresno Uni. Sch. Dist.*, 570 F. Supp. 2d. 1212, 1220 (E.D. Cal. 2008).   Because plaintiffs raised

16   the issue at the administrative level, they satisfied the exhaustion requirement as to the allegations of

17   improper restraint.   Plaintiffs exhausted their administrative remedies as to the allegations on which they

18   base their Fourth Amendment claim, brought against defendants pursuant to Section 1983.   Accordingly,

19   defendants' motion to dismiss this cause of action for lack of jurisdiction is denied.

20                                    **Failure to State a Claim**

21                                     **Standard of Review**

22          A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

23   pleadings set forth in the complaint.   A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either

24   a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

25   theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).   In considering a motion

26   to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint,

27   construes the pleading in the light most favorable to the party opposing the motion, and resolves all

28   doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

1    To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief

2  that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007).

3  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

4  the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129

5  S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks

6  for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S.

7  at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

8  'stops short of the line between possibility and plausibility for entitlement to relief." *Id.* (quoting

9  *Twombly*, 550 U.S. at 557).

10    "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

11  allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more

12  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

13  *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted).  Thus, "bare

14  assertions...amounting to nothing more than a 'formulaic recitation of the elements'...are not entitled to

15  an assumption of truth." *Iqbal*, 129 S. Ct. at 1951 (quoted in *Moss v. United States Secret Serv*., 2009

16  U.S. App. LEXIS 15694, *14 (9th Cir. 2009)).  A court is "free to ignore legal conclusions, unsupported

17  conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual

18  allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 765, 767 (8th Cir. 2003) (citation

19  omitted).

20    Moreover, a court "will dismiss any claim that, even when construed in the light most favorable

21  to plaintiff, fails to plead sufficiently all required elements of a cause of action."  *Student Loan*

22  *Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, "a complaint . . . must

23  contain either direct or inferential allegations respecting all the material elements necessary to sustain

24  recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car*

25  *Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

26                                          **Fourth Amendment**

27    Defendants argue that plaintiffs' Fourth Amendment claim must be dismissed because they enjoy

28  qualified immunity.  Qualified immunity protects section 1983 defendants "from liability for civil

12

1   damages insofar as their conduct does not violate clearly established statutory or constitutional rights

2   of which a reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936,

3   943 (9th Cir. 2004), *overruled on other grounds*, *Action Apt. Assoc., Inc. v. Santa Monica Rent Control*

4   *Bd.*, 509 F.3d 1020 (9th Cir. 2007).  The "heart of qualified immunity is that it spares the defendant from

5   having to go forward with an inquiry into the merits of the case.  Instead, the threshold inquiry is

6   whether, assuming that what the plaintiff asserts the facts to be is true, any allegedly violated right was

7   clearly established." *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).  The issue of qualified immunity

8   is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v.*

9   *Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991).

10       "In analyzing whether School Officials are entitled to qualified immunity," the Court addresses

11   two questions. *Preschooler II v. Clark County Sch. Bd. of Trs*., 479 F.3d 1175, 1179 (9th Cir. 2007).

12   First, the Court considers, "taken in a light most favorable to the party asserting the injury, the party has

13   established a violation of a federal right." *Id*.  If this "threshold inquiry is satisfied," the Court next

14   considers "whether the School Officials' conduct violated 'clearly established statutory or constitutional

15   rights of which a reasonable person would have known." *Id*.  "The judges of the district courts and the

16   courts of appeals should be permitted to exercise their sound discretion in deciding which of the two

17   prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the

18   particular case at hand." *Pearson v. Callahan*, 555 U.S.223, 129 S.Ct. 808, 818 (2009).  In discussing

19   *Pearson*, the Ninth Circuit Court of Appeals explained that "lower courts are no longer required to

20   consider whether a constitutional violation occurred before considering whether the right in question was

21   'clearly established.'" *Moss v. U.S. Secret Service*, 572 F.3d 962, 968 n. 5 (9th Cir. 2009).

22                                           *Clearly Established Right*

23       The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official

24   would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the

25   unlawfulness must be apparent.*" Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987).

26   "The question is what the officer reasonably understood his powers and responsibilities to be, when he

27   acted under clearly established standards." *Saucier v. Katz*, 533 U.S. 194, 208, 121 S.Ct. 2151 (2001).

28       "To determine that the law was clearly established, we need not look to a case with identical or

1   even 'materially similar' facts." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003), *cert. denied*,

2   543 U.S. 825, 125 S.Ct. 43 (2004).  "Rather, the 'standard is one of fair warning: where the contours of

3   the right have been defined with sufficient specificity that a state official had fair warning that [his]

4   conduct deprived a victim of his rights, [he] is not entitled to qualified immunity.'" *Serrano*, 345 F.3d

5   at 1077 (quoting *Haugen v. Brosseau*, 339 F.3d 857, 873 (9th Cir. 2003)).  "[O]fficials can still be on

6   notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*,

7   536 U.S. 730, 741, 122 S.Ct. 2508 (2002).

8           "[T]he right of a student to be free from excessive force at the hands of teachers employed by

9   the state was clearly established as early as 1990." *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479

10  F.3d 1175, 1178 (9th Cir. 2007) (quoting *Doe v. State of Hawaii Dep't of Educ.*, 334 F.3d 906, 910 (9th

11  Cir. 2003)).  Because plaintiffs allege that he was a victim of excessive force based on the repeated,

12  unreasonable use of restraints, the allegations are based on a clearly established right.  Accordingly,

13  plaintiffs' complaint satisfies this prong.

14                                          *Violation of Federal Right*

15          Next, the Court considers whether the conduct rises to the level of a violation of Student's Fourth

16  Amendment right to be free from unreasonable seizures by the school officials.  The Court begins with

17  the principle that "excess force by a [school official] against a student violate[s] the student's

18  constitutional rights." *P.B. v. Koch*, 96 F.3d 1298, 1302-03 (9th Cir. 1996).  Whether the use of force

19  by a teacher is a constitutional violation is analyzed under the "reasonableness" rubric of the Fourth

20  Amendment. *Doe*, 334 F.3d at 908-09.  The Court considers the reasonableness of the school official's

21  actions "in light of the age and sex of the student and the nature of the infraction." *Id*.

22          Based on the allegations of the complaint, this Court cannot determine the reasonableness of

23  defendants' actions in light of the circumstances.  Although the Court knows the age and sex of Student,

24  and that Student suffers from a disability, the allegations against the defendants do not describe the

25  circumstances surrounding the incidents in which Ms. Briones and another District employee performed

26

27

28

1    restraints on Student. on December 17, 2007, January 8-10, 2008, and January 15-18, 2008.[1]  In its

2    evaluation, the Court must "look objectively at the specific circumstances of the school and child."

3    *Preschooler II*, 479 F.3d at 1181.  In the complaint, plaintiffs allege that defendants "performed a two

4    person prone restraint" on Student on the days in question.  Assertions that defendants performed

5    physical restraints on Student do not establish a violation of Student's constitutional right, however, as

6    "state law explicitly allows school officials to physically restrain students when the student poses an

7    immediate danger to himself or others." *Alex G. v. Bd. of Trs.*, 387 F. Supp. 2d. 1119, 1125 (E.D. Cal.

8    2005) (citing Cal. Code Regs. Tit. 5 §3052(I)).  This Court's reasonableness determination is made

9    difficult by the lack of details, particularly in light of Student's admitted history of violence in school.

10   Accordingly, the performance of physical restraints may have been reasonable under the circumstances.

11   Where, as here, defendants bear the burden to demonstrate reasonableness, and this Court must view the

12   allegations in a light most favorable to the plaintiffs, however, this Court cannot grant defendants'

13   motion to dismiss based on qualified immunity.  Accordingly, defendants' motion to dismiss based on

14   qualified immunity is denied without prejudice.

15                                   **CONCLUSION AND ORDER**

16        For the reasons discussed above, this Court:

17        1.      GRANTS in part and DENIES in part defendants' motion to dismiss; and

18        2.      DISMISSES plaintiffs' second (ADA) and third (Section 504) causes of action.

19

20   Date: <u>November 16, 2010</u>

21                                                    /s/ Lawrence J. O'Neill
                                                     Lawrence J. O'Neill
22                                                   United States District Judge

23

24

25

26        [1] Although plaintiffs' allegations against defendants are nondescript, the allegations surrounding the January 21, 2008
     incident are detailed.  Plaintiffs' allege that on that date, Student refused to comply with the directive to work on a reading
27   assignment.  Because he did not comply, two District employees "dragged [Student] to the hallway and performed a wall
     restraint and prone restraint on him." Compl. ¶26.  Because the named-defendants are not alleged to be involved in this
28   incident, this Court does not consider its reasonableness.